UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN B.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-cv-834 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| MARTIN J. O'MALLEY, Commissioner of the Social Security Administration,[2] | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John B. ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Title II Disability Insurance Benefits ("DIB"). The Parties have filed cross-motions for summary judgment.[3] For the reasons detailed below, Plaintiff's Motion for Summary Judgment [Dkt. 14] is DENIED and Defendant's motion [Dkt. 18] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**I. BACKGROUND**

**A. Procedural History**

On March 31, 2021, Plaintiff applied for DIB alleging a disability onset date of May 29, 2018. [Administrative Record ("R") 16.] His application was denied initially on August 11, 2021, and was denied upon reconsideration on November 8, 2021. *Id.* Following a telephonic

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2] On December 23, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration; pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted as the proper defendant for this action.

[3] The Court construes Plaintiff's Brief in Support of Reversing the Decision of the Commissioner [Dkt. 14] as a motion for summary judgment.

Administrative Hearing and a Supplemental Administrative Hearing at which a Vocational Expert ("VE") testified, an Administrative Law Judge ("ALJ") issued a June 29, 2022 decision that Plaintiff was not disabled. [R. 13-29.] On December 20, 2022, the Appeals Council denied Plaintiff's request for review [R. 1], rendering the ALJ's decision the final decision of the Commissioner, reviewable by the District Court. 42 U.S.C. § 405(g); *see* 20 C.F.R. § 404.981. Plaintiff has filed this lawsuit seeking review of the adverse decision, which is now before this Court for review.

### B. Relevant Medical History

Plaintiff was 50 years old on his alleged disability onset date. [R 17.] Although the ALJ listed several severe and non-severe conditions allegedly suffered by Plaintiff, Plaintiff's DIB application is primarily tied to suffering from osteoarthritis of the shoulders, status post bilateral total arthroplasty, and complication from left shoulder surgery. [R. 23.] After suffering an on-the-job fall Plaintiff was diagnosed with a right rotator cuff tear and over the course of 2 years underwent three surgeries due to complications from the fall. *Id*. Plaintiff's orthopedic surgeon, Dr. Robert Thorsness, performed all three surgeries on him and conducted several follow-up visits with Plaintiff where he frequently described Plaintiff's functional limitations. [R. 26.] Plaintiff initially underwent a right shoulder repair surgery in July 2018. *Id*. Following the initial 2018 surgery, he reported having good pain control. *Id*. Plaintiff then underwent physical therapy beginning on August 24th but reported in November 2018 that he was "very fatigued" and had increased pain. *Id*. He was ultimately discharged from physical therapy in December 2018. *Id*. Even so, imaging of Plaintiff's right shoulder in January 2019 indicated that the July 2018 surgery was unsuccessful, prompting him to undergo a second right shoulder surgery in March 2019. [R. 24.]

Following his second right shoulder surgery, Plaintiff reported that his pain was controlled, and he was released to return to work by July 2019. *Id*. Yet, it was during this time Plaintiff began to report pain in his left shoulder. *Id*. In September 2019 Dr. Thorsness opined that Plaintiff had a "permanent restriction" on the right shoulder, limited lifting to no more than twenty pounds, prohibited weight bearing at or above shoulder height, and restricted repetitive use of the right shoulder. [R. 26-27.] Plaintiff also received a cortisone shot in his left shoulder in September 2019. [R. 24.] In December 2019, Plaintiff was noted to have improved and was merely limited to twenty pounds of lifting and no repetitive work with the right shoulder. *Id*.

However, Plaintiff's left shoulder pain ultimately led him to undergo a third surgery, this time a shoulder replacement in his left shoulder, in February 2020. [R. at 923.] Following check-ins throughout 2020, in August 2020, Dr. Thorsness added an additional restriction on "side-to-side motions" and expanded the twenty-pound restriction to both shoulders. *Id*. Plaintiff saw Dr. Thorsness again in November 2020 at which time the record documented no additional deficits in strength, reflexes, sensation compared to previous visits and did not mention any restrictions on the use of Plaintiff's hands. *Id*.

In February 2021, Dr. Thorsness completed a Physical Medical Source Statement, indicating that Plaintiff could sit, stand, and walk for at least six hours in an eight-hour workday, occasionally lift weights of ten and twenty pounds, and occasionally climb ladders, but could only frequently perform other postural activities. *Id*. He further opined Plaintiff could use his hands for fifty percent of the workday but could only reach his arms in front of his body thirty percent and reach overhead zero percent of the workday. *Id*. Dr. Thorsness also indicated Plaintiff would require additional unscheduled breaks, could not perform repetitive movements, could only do low-stress work, would be off task twenty percent of the time, and would be absent two days per

3

month. *Id*. Dr. Thorsness did not see Plaintiff the day he authored the Medical Source Statement; Plaintiff was seen by a physician assistant who noted he had good strength in the bilateral upper extremities and mentioned no limitation on hand use or need for additional breaks. *Id*.

### C. The ALJ's Decision

The ALJ's June 29, 2022 decision followed the standard five-step sequential process for determining disability. [R. 13-29.] At Step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 29, 2018. [R. 19.] At Step 2, the ALJ found a single severe impairment: osteoarthritis of the shoulders, having a status post bilateral total arthroplasty. [R. 19-21.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 21-28.]

Before Step 4, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except with the following additional limitations; frequent stooping and climbing ramps and stairs; no kneeling, crawling, or climbing ladders, ropes, and scaffold; no more than occasional reaching overhead or occasional pushing and pulling of arm controls; no concentrated exposure to vibrations (*i.e.*, vibrating tools); and no working around unprotected dangerous moving machinery. [R. 22.] While the ALJ ultimately determined that Dr. Thorsness's Medical Source Statement was unpersuasive, the ALJ found portions of Dr. Thorsness's opinions regarding restrictions on the Plaintiff's shoulders to be somewhat persuasive. [R. 27.]

At Step 4, the ALJ determined Plaintiff could not perform his past relevant work as a CNC machinist (DOT #600.280-022; medium exertion). [R. 28.] At Step 5, based on the VE's testimony, the ALJ made alternative findings of other occupations Plaintiff was capable of

4

performing given his age, education, work experience, and RFC. [R. 29.] Specifically, the ALJ determined Plaintiff could also perform other jobs that existed in significant numbers in the national economy. *Id*. The ALJ determined the VE's testimony was consistent with the Dictionary of Occupational Titles. *Id*. As a result of these determinations, the ALJ found Plaintiff not disabled under the Social Security Act. [R. 28.]

## II. SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW

According to the Social Security Act, a person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled, an ALJ must apply a sequential five-step test. *See* 20 C.F.R. § 404.1520(a). The ALJ must evaluate:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner] ...; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). The burden of proof is on the claimant for the first four steps. *Clifford*, 227 F.3d at 868. At step five, the burden shifts to the agency to show that "there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (citing 20 C.F.R. § 416.960(c)(2)).

Judicial review of the ALJ's decision is confined to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Mandrell v. Kijakazi*, 25 F.4th 514, 515-16 (7th Cir. 2022) (citations omitted); *see also* 42 U.S.C. § 405(g). The Court does not supplant the ALJ's findings with the Court's assessment of the evidence, *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022), but the Court must "review the entire record," *Jeske*

5

*v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020), and remand where the opinion does not permit a meaningful review, *Martinez v. Kijakazi*, 71 F.4th 1076, 1080 (7th Cir. 2023). On review, the Court does not "merely rubber stamp the ALJ's decision." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). If there is substantial evidence in support of the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted).

While substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusion. *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024). Yet an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley,* 97 F.4th 1050, 1053 (7th Cir. 2024). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal signals and citations omitted).

Additionally, "[w]hen reviewing a disability decision for substantial evidence, [the Court] will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it."

*Warnell*, 97 F.4th at 1052-53. Finally, as to this Court's obligations, "[a] district (or magistrate) judge need only supply the parties…with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

## III. ANALYSIS

Plaintiff argues (1) the ALJ erred in failing to adequately evaluate the relevant medical evidence that both supported and was consistent with Dr. Thorsness's opinion and (2) the ALJ erred in rejecting reports of Plaintiff's subjective symptoms. The Court disagrees, and finds the ALJ adequately evaluated the relevant medical evidence and made a proper assessment coming to her decision. The Court accordingly affirms.

**A. The ALJ Properly Evaluated Dr. Thorsness's Opinion and Plaintiff's Medical Record**

Plaintiff first challenges the ALJ's assessment of Dr. Thorsness's medical opinions as unpersuasive. [Dkt. 14 at 4.] Plaintiff argues the ALJ discounted Dr. Thorsness's opinion improperly and did not provide sound reasoning that Dr. Thorsness's opinion was not persuasive as to supportability and consistency factors. [Dkt. 14 at 5.] Further, Plaintiff contends the ALJ relied on a selective reading of the record and provided only a conclusory analysis of Plaintiff's medical history in comparison to Dr. Thorsness's observations and other reported abnormalities. [Dkt. 14 at 7-8.]

Beginning with Plaintiff's argument as to the contention that the ALJ improperly evaluated the opinions of Dr. Thorsness, under the applicable regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must determine the persuasiveness of all medical opinions in the record by considering and explaining the supportability and consistency of the opinion to the record. *Id*. §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th

7

611, 614 (7th Cir. 2022). The supportability factor requires the ALJ to consider the objective medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor requires the ALJ to consider and explain how the medical opinion is consistent with the claimant's other medical and nonmedical sources. *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2). After assessing these factors, the ALJ may but is not required to, explain how she considered three other factors in her analysis—the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict the source's opinion. *Id.* §§ 404.1520c, 416.920c(b)(2).

Here, the ALJ satisfied these requirements because an ALJ's decision must only explain how she considered the factors of supportability and consistency but need not provide a detailed analysis. *Victor F. v. Kijakazi*, No. 22-cv-1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). Again, the ALJ needs only to "'minimally articulate'" the "'justification for rejecting or accepting specific evidence of a disability'" to satisfy the "lax" standard. *Berger*, 516 F.3d at 545.

As to the supportability factor, the ALJ discounted Dr. Thorsness's opinion because it contained internal inconsistencies with the record. The ALJ first noted Dr. Thorsness himself did not see Plaintiff the day the Medical Source Statement was authored; a physician's assistant saw Plaintiff. [R. 26.] Plaintiff argues this fact does not render Dr. Thorsness's opinion unpersuasive. [Dkt. 14 at 8.] However, the ALJ clearly articulated the issue was not that it was a physician's assistant who saw Plaintiff in February 2021, but rather that the physician's assistant's report of Plaintiff's then-current state was inconsistent with the Medical Source Statement given by Dr. Thorsness. [R. 26.] The ALJ highlighted the fact the physician's assistant noted Plaintiff had "good strength in the upper extremities and mentioned no limitation on hand use or need for additional breaks." [R. 26-27.] Indeed, the ALJ focused on the three-month gap between Dr. Thorsness's last

8

examination and his Medical Source Statement to highlight discrepancies in the record. [R. 26.] Particularly, the ALJ articulated that the February screening appears to be at odds with Dr. Thorsness's February 2021 Medical Source Statement and his observations from the November 2020 appointment. *Id*. This articulation builds a logical bridge for this Court to understand how the ALJ weighed the evidence and concluded that the February examination did not support the opinions in the Medical Source Statement.[4] *Bakke*, 62 F.4th at 1066. It is the ALJ's prerogative to determine the credibility and consistency of information within the Administrative Record, and the Court does not find it "patently wrong" for the ALJ to have found Dr. Thorsness's opinions unpersuasive because Dr. Thorsness did not observe Plaintiff's then-current state when he filled out the Medical Source Statement. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

As to consistency, the ALJ explained that the treating notes provided inconsistent symptoms throughout physical examinations. [R. 26.] The ALJ found there was nothing in the record to support a limitation of hand movement, "nor restrictions in twisting, stooping, crouching or climbing stairs, or need for additional breaks, absences, or time off tasks." *Id*. The ALJ did not substitute her judgment for Dr. Thorsness's; rather, she was entitled to credit whatever portions of the prior administrative medical findings she found persuasive and to rely on the absence of record evidence to support increased limitations. *See Jack A. v. Kijakazi*, No. 20-cv-3446, 2021 WL 5882145, at *3 (N.D. Ill. Dec. 13, 2021) ("ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians").

The ALJ gave several supporting reasons for discounting Dr. Thorsness's Medical Source Statement given in February 2021. Specifically, the ALJ found Dr. Thorsness's opinion limiting

---

[4] Again, the ALJ does find the permanent shoulder restrictions established by Dr. Thorsness as "somewhat persuasive" and does note that they are incorporated into the residual functional capacity. [R. 27.] Plaintiff does not take issue with this incorporation and, thus, the Court need not address that aspect of the ALJ's decision.

Plaintiff's mobility and engagement in work activities at odds with Plaintiff's statements and conditions from April 2019 to February 2021. [R. 27.] The ALJ detailed the Plaintiff's statements, including a March 2020 statement that his pain is "well controlled" and a February 2021 report of occasional left arm pain and minimal right shoulder pain. *Id*. Plaintiff points out multiple occasions where his reported pain could lead to different conclusions. [Dkt. 14 at 12.] Yet it is not up to the Court to determine the truth or weight of the particular evidence; the ALJ decides whom to believe if substantial evidence supports such decisions. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).

Moreover, the ALJ did not selectively rely on limited evidence in the record or ignore other relevant evidence. The ALJ particularly noted she found portions of Dr. Thorsness's opinion persuasive regarding "permanent restrictions" on Plaintiffs shoulder and then she incorporated those restrictions within the RFC. [R. 27.] The ALJ also articulated the portions of Dr. Thorsness's opined restrictions she did not find persuasive. *Id*. This includes the August 2020 opinion where Dr. Thorsness found Plaintiff had a restriction on "side to side" motions. *Id.* The ALJ found this restriction vague, as it was not presented in vocationally relevant terms such as pushing, pulling, or reaching. *Id*.

Plaintiff additionally faults the ALJ for summarizing the evidence and providing conclusory language that did not properly explain how certain abnormalities of record were outweighed by normalities. [Dkt. 14 at 9.] Though the ALJ does not explain in each section the symptoms articulated by Plaintiff, she did so elsewhere in the decision [*see* R. 23-27], which is all she is required to do. The Seventh Circuit has made clear that an ALJ's findings do not need to address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning. *Warnell*, 97 F.4th at 1053-54. The

10

Court is persuaded that the ALJ adequately explained her analysis and included pieces of Dr. Thorsness's opinion such as the restriction to light work, which involves lifting no more than 20 pounds at a time and disregarded those not found persuasive. [R. 27.] It was ultimately Plaintiff's burden to prove the restrictions and limitations he is alleging, which the ALJ was in her right to weigh or reject. *Bakke*, 62 F.4th at 1066; *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was Weaver's burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work").

The ALJ fulfilled her duty with respect to Dr. Thorsness's opinion because she considered it with the record as a whole and explained the weight she gave it and why, with traceable reasoning and substantial evidence. *Michael G. v. Kijakazi*, No. 19-cv-6017, 2022 WL 4119775, at *17 (N.D. Ill. Sept. 9, 2022). In arguing the ALJ should have found Dr. Thorsness's evaluation more persuasive, Plaintiff invites the Court to substitute its judgment for the ALJ's, which the Court cannot do. *See Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) ("Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to determine whether the claimant is in fact disabled."). The Court cannot remand on this basis.

### B. The ALJ's Subjective Symptom Assessment is Not Patently Wrong

Plaintiff next argues the ALJ failed to properly assess his subjective symptoms. [Dkt. 14 at 4.] The Court disagrees.

Subjective statements by a claimant as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider several factors, including (1) relevant medical evidence, including intensity, and limiting effects of symptoms; (2) treatment and efficacy; (3) return to

11

gainful activity; (4) work during disability period; (5) daily activities; and (6) statements inconsistent with the record. 20 C.F.R. § 416.929(c). An ALJ, however, need not discuss every detail in the record as it relates to every factor; summaries of medical evidence, while definitionally "partial and selective," are appropriate. *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). So long as an ALJ provides specific reasons supported by the record, the Court will not reverse an ALJ's subjective symptom conclusions unless they are patently wrong, "meaning it lacks explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

Here, the ALJ's decision to find Plaintiff's subjective symptoms not entirely consistent is supported by substantial evidence. The Seventh Circuit has recognized a claimant's "subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). The ALJ compared Plaintiff's subjective statements with his treatment records and noted Plaintiff's alleged complaints were not entirely consistent with the medical evidence and other evidence in the record. [R. 23.] Although Plaintiff testified he suffered constant pain, primarily in his left shoulder, and could not reach his arms above his shoulders, the ALJ noted that treatment notes in the record showed Plaintiff reported improved pain symptoms after his surgery. [R. 27.] For example, in April 2019, he claimed he was "just sore" and otherwise felt good; in December 2019, he described his shoulder as "a little painful"; and in February 2021, he reported only occasional pain when reaching behind his back or out to the side. *Id*. The ALJ did highlight, however, Plaintiff's restrictions, noting he could not lift weights over 20 pounds and, thus she limited him to less than the full range of light work. [R. 27-28.] The ALJ also noted that the impairment of osteoarthritis of the shoulders would significantly limit the ability to perform basic work activities, and provided an RFC that reflected such restrictions. [R. 19.] It was the intensity, persistence, and limiting effects of Plaintiff's

12

symptoms the ALJ disagreed with, not the fact that Plaintiff had subjective pain. Such weighing of the evidence is not "patently wrong". *See Thompson K. v. Kijakazi*, No. 21-cv-1298, 2023 WL 7016621, at *7 (N.D. Ill. Oct. 25, 2023) (citing *Gedatus*, 994 F.3d at 901).

The ALJ also appropriately considered Plaintiff's reported daily activities. *See Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (holding that "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated"). The ALJ acknowledged Plaintiff's reports he needed breaks to complete basic tasks such as cooking due to pain and numbness in his arms. [R. 23.] In contrast, however, the ALJ also noted the record showed Plaintiff could prepare meals, do a range of household chores, drive, shop in stores, and care for his son, along with reporting he was doing well with most daily tasks in February 2021. *Id*. Plaintiff argues the ALJ improperly utilized the reports of Plaintiff's daily activities to prove he could do certain work tasks. [Dkt. 14 at 12.] The Court is not convinced. In the record, the ALJ never equates daily living activities with Plaintiff's ability to perform gainful employment. Rather the ALJ contrasts Plaintiff's testimony about his daily activities "with his reports throughout the record that his pain symptoms are controlled." [R. 28.] As the Seventh Circuit has noted, this use of daily activities assessment is proper. *Alvarado*, 836 F.3d at 750.

Plaintiff next contends the ALJ improperly relied on his improvement with treatment, arguing that evidence of improvement may only be utilized to showcase a plaintiff's ability to engage in substantial gainful activity. [Dkt. 14 at 13]. However, the ALJ may consider such improvements in determining the weight of the evidence, provided there is a logical bridge. *Bakke*, 62 F.4th at 1066. Here, the ALJ properly utilized the reports of Plaintiff's improvement for two purposes: assessing Plaintiff's symptoms and establishing the RFC. [R. 23-28.] The ALJ explicitly

considered instances where Plaintiff rated his pain as high, contrasted with times he reported "doing well," in assessing the RFC. 20 C.F.R. § 404.1546(c) ("the administrative law judge…is responsible for assessing [] residual functional capacity"). The ALJ did not utilize any discussion of improvements to explicitly state Plaintiff can work full-time or engage with any job listed in Step 5 of her decision. [R. 29.] The Court finds these assessments logically connected to the designation of light work and finds the ALJ adequately explained this determination to the extent required by the Seventh Circuit. *Warnell*, 97 F.4th at 1053-54.[5]

Finally, Plaintiff faults the ALJ for not addressing the fact he had a good work history in assessing the credibility of his subjective symptoms. [Dkt. 14 at 14]. However, Plaintiff relies on outdated case law as cases filed on or after March 28, 2016, like this case, "eliminat[e] the use of the term 'credibility'" (that did appear in SSR 96-7p, which SSR 16-3p superseded) to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304, at *2. Moreover, the ALJ was not required to accept Plaintiff's work history as proof Plaintiff's symptoms were as severe as alleged, or even to discuss it in her decision as there is no statutory requirement to do so. *Chris W. v. Berryhill*, No. 17-cv-6532, 2018 WL 6305013, at *9 (N.D. Ill. Dec. 3, 2018) ("an ALJ's silence with respect to a claimant's work history [in the analysis of subjective symptoms] does not require reversal when [that] determination is otherwise supported by substantial evidence"). As discussed above, the ALJ detailed multiple

---

[5] In a similar vein, Plaintiff argues that the ALJ did not properly assess pain that may wax and wane during treatment. [Dkt. 14 at 14]. However, Plaintiff does not identify any place in the record he or any medical professional opined there would be express variations in his symptoms requiring the ALJ to articulate the limitations of waxing and waning symptoms. *See Herrman v. Astrue*, No. 07-cv-6914, 2010 WL 356233, at *12 (N.D. Ill. Feb. 1, 2010) (Judges are not "archaeologists consigned to excavating masses of paper in search of possibly revealing information that might benefit the party whose briefs provided no clue of where to dig.") (citing *Northwestern Nat. Insurance Co. v. Baltes*, 15 F.3d 660, 662-663 (7th Cir. 1994)); *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."). The Court finds the ALJ properly noted times Plaintiff was fatigued or in pain compared to times when he reported improvements in establishing the RFC. [R. 23-27.] Moreover, as the Commissioner notes correctly [Dkt. 18 at 17], the RFC would naturally be expected to encapsulate the range of ability by Plaintiff. 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations").

14

reports that contradict Plaintiff's testimony as to his daily activities, routine, and medical records. The Court already has found that the ALJ's decision was supported by substantial evidence, and the ALJ properly considered a variety of factors listed within SSR 16-3p in reaching a decision. Whether Plaintiff's work history outweighed other considerations when assessing the reliability of his assertions is a question for the ALJ. It is impermissible for the Court to substitute its judgment for that of the ALJ on this topic. *Gedatus*, 994 F.3d at 900.

Plaintiff's belief that the ALJ should have reassessed his subjective symptoms based on his work history or any other factor within the analysis does not, by itself, constitute sufficient grounds for reversal. *See Frank J. v. Saul*, No. 19-cv-3176, 2020 WL 6447928, at *5-6 (N.D. Ill. Nov. 3, 2020). It may be that "the ALJ's [subjective symptom] determination was not flawless," but, here, "it was far from 'patently wrong.'" *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). The Court declines any invitation to reweigh the evidence. *Thompson K.*, 2023 WL 7016621, at *7 (citing *Gedatus*, 994 F.3d at 901). Accordingly, the Court will not remand as to the ALJ's subjective symptom evaluation.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision to be supported by substantial evidence. Defendant's motion for summary judgment [Dkt. 18] is GRANTED; Plaintiff's motion for summary judgment [Dkt. 14] is DENIED. The final decision of the Commissioner denying benefits is affirmed.

ENTERED: July 23, 2024

                                                                       Hon. Keri L. Holleb Hotaling,
                                                                       United States Magistrate Judge